## In Re Anonymous No. 62 D.B. 75

Disciplinary Board Docket No. 62 D.B. 75.

MUNDY, *Member*, May 20, 1986—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, The Disciplinary Board of the Supreme Court of Pennsylvania (hereinafter referred to as Disciplinary Board), submits its following findings and recommendations to your honorable court with respect to the above petition for reinstatement.

## I. PROCEDURAL HISTORY

Petitioner, [ ], was suspended from the practice of law on January 22, 1980, for a period of five years retroactive to November 25, 1975, the date upon which the Supreme Court had previously entered an order placing petitioner on inactive status pursuant to Rule 301(a) of the Rules of Disciplinary Enforcement. The suspension followed petitioner's plea of nolo contendere to charges of simple and aggravated assault for which he was sentenced to imprisonment for a term of not less than one year and more than two years three months, and five years probation by the Court of Common Pleas of [A]

County on January 25, 1978. Though eligible to reapply for admission to the Bar of this court upon the expiration of his suspension in 1980, petitioner chose to wait until his probationary period had also expired before filing a petition for reinstatement by petition filed on August 15, 1983.

The matter was referred to hearing committee [  ] which, following a hearing which was held on September 14, 1984, filed a report with the Disciplinary Board on February 5, 1985, in which the committee unanimously recommended petitioner's reinstatement to the practice of law. No exceptions to this report and recommendation were filed by the Office of Disciplinary Counsel.

Upon its initial consideration of this petition, the board remanded the matter to hearing committee [  ] pursuant to section 89.253 of the Disciplinary Board Rules in order that the record be supplemented and additional evidence obtained. Following two additional hearings held by hearing committee [  ] pursuant to the board's order of remand, which were held on October 17 and November 6, 1985, the hearing committee has again submitted a report to which the Office of Disciplinary Counsel does not take exception, unanimously recommending the reinstatement of petitioner.

## II. FACTUAL BACKGROUND

In the summer of 1975, petitioner was employed by the law firm of [B]. He and his wife, [C], had two children aged 18 months and three and one-half years, but had recently separated.

On August 15, 1975, petitioner encountered his spouse leaving her apartment building with a male companion. Petitioner followed them to the [D] train

station where his spouse and her friend boarded a [E] train.

They returned on the 11:06 p.m. train, but instead of disembarking at the [D] station, they continued on to the [F] station stop. Petitioner boarded the train at [D] armed with a .38 caliber revolver. As the train pulled out of the [D] station, petitioner approached his spouse from the rear and shot her twice at close range in the back of the head, and a third time in the cheek. After she fell to the floor, she was shot twice more in the back. He then forced her companion and a second passenger to jump from the moving train, as a result of which the passenger suffered a fractured leg.

After eluding the police for a period of more than two months, petitioner voluntarily committed himself to the [   ] State Hospital on October 24, 1975. He was diagnosed as suffering from manic depression, hysterical personality with anti-social features, and alcoholism. He remained confined to the [   ] State Hospital until January 25, 1978.

On July 22, 1976, he entered a plea of nolo contendere to the charges of simple and aggravated assault, and was returned to the [   ] State Hospital for continued treatment. On January 25, 1978, upon his release from [   ] State Hospital he was sentenced by the Honorable [G] of the Court of Common Pleas of [A] to imprisonment for a term of not less than one year and no more than two years three months duration with credit being given to the two years and three months which he had already spent at [   ] State Hospital, and an additional five years probation commencing on January 25, 1978.

After his release from [   ] State Hospital, petitioner was employed as a law clerk/paralegal with the Department of [   ] in [H], as well as for various

attorneys in private practice, including [ I ], Esq., who represents petitioner in these proceedings. In considering his initial application, the hearing committee found petitioner to have maintained and supplemented his knowledge of law by subscribing to numerous legal publications and the purchase of several law books. The hearing committee also found petitioner to have demonstrated his competence by doing legal research in over three dozen areas of law as part of his activities as a law clerk/paralegal.

The hearing committee heard testimony from a psychoneurologist, who, though not petitioner's principal treating physician, had attended to petitioner since 1975. He testified that petitioner suffered from a form of manic depression which requires him to take the drug Lithium to prevent any reoccurrence of the hyperactivity which was thought to be responsible for his prior conduct. According to the testimony, faithful adherence to this prescription therapy would prevent petitioner from suffering a relapse.

In addition, during its initial consideration, the committee heard testimony from respondent's former spouse which raised serious questions as to respondent's recovery from his psychiatric problems. This testimony was for the most part disregarded by the hearing committee as "a reflection of her deep-seated, but understandable, animus toward petitioner."

## III. DISCUSSION

Upon its initial consideration of this matter, the board did not agree that the serious allegations made by respondent's former spouse should be so cavalierly dismissed. Her testimony concerned allegations that petitioner has exhibited hostile tenden-

cies even subsequent to his discharge from [ ] State Hospital. Specifically, she testified that petitioner had demonstrated his emotional instability during court hearings concerning visitation and support which were held in [J]. She also testified that petitioner had acted as a lawyer in a jury trial since his suspension, a specific violation of the Disciplinary Rules. Furthermore, the record disclosed that petitioner had passed the [H] state bar examination and his application for admission to the practice of law in [H] was pending, without further clarification. The initial record was also lacking the testimony of petitioner's principal treating physician who was not avaiable to testify to the time of the initial hearing.

Because the conduct of petitioner which led to this suspension was so egregious, the board during its initial determination of this matter decided to remand to the hearing committee with the following specific directives:

1. Petitioner was to be examined by an independent psychiatrist to be appointed by the board.

2. An inquiry was to be directed to the [H] Board of Law Examiners as to petitions pending admission to the [H] Bar.

3. An inquiry was to be made concerning petitioner's alleged participation in a jury trial in the [J] courts.

4. An inquiry was to be made regarding petitioner's alleged conduct during the course of visitation and support hearings in [J].

5. The committee was to obtain the testimony of [K], M.D., petitioner's primary treating physician.

Pursuant to the board's order, petitioner was examined by [L], M.D., a prominent [A] psychiatrist, who after examining petitioner on June 12, 1985, and reviewing voluminous records in connection

with his case, submitted a report on July 30, 1985, which essentially confirmed that respondent is in a state of remission from his manic depressive condition, and further opined that he does not represent an unacceptable risk if he continues his current treatment plan. In addition, the committee took live testimony from petitioner's principal treating physician. [K], M.D., who testified that he has no reservations about advocating petitioner's reinstatement to the practice of law and further that he presents no greater danger to others than does the rest of the population. Perhaps more importantly, Dr. [K] testified that in the seven years of his care, petitioner has at all times remained under the required medication, and that he believes petitioner will continue on this program.

In addition, the Office of Disciplinary Counsel conducted an investigation into the other issues raised in the prior proceeding by making inquiries of the attorney who represented petitioner's spouse in the [J] hearings with respect to allegations of misconduct therein, and with the appropriate authorities in [H] concerning petitioner's status with respect to admission to that state's bar. As a result of this investigation, it was determined that petitioner's application to the state bar in [H] is presently on hold pending the outcome of these proceedings, and there was no evidence of misconduct with respect to petitioner's actions in the support and visitation hearings held in [J]. The hearing committee also found that petitioner's jury's trial experience was limited to a single civil matter in which petitioner represented himself, and that at no time was he engaged in a representative capacity in a trial since the time of his suspension.

In addition, before reissuing its unanimous recommendation for reinstatement, the hearing com-

mittee heard testimony from petitioner's probation officer, the Chief of the [H] Department of Health, Intoxicated Driving and Justice Program, the Associated Director of the Southeastern Pennsylvania Mental Health Association, the Parish Associate at [   ] Church in [A], and the Assistant Director of the American Bar Association Public Services Division, all of whom testified favorably on the issues of petitioner's good conduct, competency and qualification to practice law.

In light of the foregoing, and giving consideration to the fact that the Office of Disciplinary Counsel has again determined not to oppose the instant petition for reinstatement, this board agrees that petitioner should be reinstated to the practice of law in the Commonwealth of Pennsylvania.

## IV. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Disciplinary Board of the Supreme Court of Pennsylvania finds and concludes as follows:

1. Petitioner has the competency and learning in the law required for readmission to the practice of law in the Commonwealth of Pennsylvania.

2. Petitioner has the moral qualifications for readmission to the practice of law in the Commonwealth of Pennsylvania.

3. Petitioner's resumption of the practice of law in the Commonwealth of Pennsylvania will not be detrimental to the integrity and standing of the bar or the administration of justice, nor will it be subversive of the public interest.

4. Petitioner should be reinstated to the practice of law in the Commonwealth of Pennsylvania and should be admitted to the Bar of the Supreme Court of Pennsylvania.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends to the Supreme Court of Pennsylvania that the instant petition for reinstatement of Petitioner to the practice of law in the Commonwealth of Pennsylvania be granted by your honorable court, and further recommends costs be borne and paid for by said petitioner. A statement of such expenses is appended to the instant report.

Mr. Schwartzman dissented, Mr. Brown abstained and Ms. Heh did not participate in the adjudication.

## ORDER

NIX, *C.J.*, And now, this July 7, 1986, upon consideration of the recommendation of the Disciplinary Board dated May 20, 1986, the petition for reinstatement is denied.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Zappala dissents and would accept the recommendation of the Disciplinary Board.